IN THE SEVENTH JUDICIAL DISTRICT COURT
IN AND FOR GRAND COUNTY, STATE OF UTAH

| | |
|---|---|
| STATE OF UTAH<br>Plaintiff,<br>vs.<br>JEFFREY PAUL HACK,<br>Defendant. | ORDER ARRESTING JUDGMENT<br>Case No. 241700041<br>Judge Don M. Torgerson |

This is before the court on Defendant's *Motion to Arrest Judgment*. The court heard argument on July 1, 2025. Defendant was present by video and represented by his attorney, Bradley J. Henderson. The State was represented by Aaron Lancaster. The court took the matter under advisement and grants the motion, as explained below.

## BACKGROUND

It's a cruel thing to disrupt your estranged sister's expensive destination wedding. But that's what Jeffrey Hack tried to do. Apparently angry that his mother wasn't invited to the wedding, Hack enlisted a former Marine Corps buddy with shaky mental health ("Sprague") to drive from Las Vegas to Moab, Utah, and cause mischief at the wedding. Hack supplied a copy of the wedding invitation (date, time, and location), provided some details about the family, asked Sprague to record and photograph whatever he ended up doing, and provided $400 for gas and supplies. He even directed Sprague to a Radio Shack to purchase a GoPro camera and redirected Sprague when he was lost and heading to Ogden instead of Moab.

For his part, Sprague had a bizarre collection of wedding-crasher supplies. When arrested, he had a flying squirrel (sugar glider), an antique bird cage, a custom-built chess set, biodegradable glitter boots for his costume, glitter "bombs" or "balms"[1], nun

[1] Sprague described the glitter as his own invention made from coconut oil, mango butter, beeswax, and essential oils. He claims to have brought multiple colors, shapes, sizes, and scents including "dude ones" and "girl ones." He also claims to sell them to reduce microplastics in the world. Unfortunately, there weren't any photos or physical exhibits introduced at trial of these items, so Sprague's explanation is the sole source of information.

chucks, a homemade slingshot, a broken arrow, a working arrow, a bow, walkie-talkies, a camera, party supplies (party hats and napkins), and mixed Tannerite.

Sprague had purchased the Tannerite and party supplies at Walker Drug in Moab the evening before the wedding. He claims to have bought the Tannerite because it was on sale and that it was unrelated to crashing the wedding. He also never bought a GoPro from Radio Shack, choosing instead to buy cocaine and ketamine with the remaining cash from Hack. He spent the night before the wedding using cocaine, ketamine, and Xanax. He camped, hung out, and shot his slingshot.

When it came time for the wedding, Sprague did not complete his "mission", and the wedding was only superficially disrupted. He drove to the wedding venue but was turned away by the wedding planner around 5:15 p.m. She testified that Sprague was in his vehicle and asked to see the person in charge. He showed her a box wrapped around his leg with wires coming out of it, claiming it was a bomb. He also tossed a walkie talkie into the shrubs so the person in charge could contact him if they changed their mind. Sprague left and the wedding planner called law enforcement who arrived after the wedding ceremony was over. Sprague showed up again around 1:00 a.m., after all wedding events were completed, and sat in his vehicle before driving away. The Wedding Planner called law enforcement and Sprague was arrested down the road from the venue.

All told, the bride was delayed about 30 minutes in walking down the aisle. She did not know why she was delayed and she first found out about Sprague and his bomb threat after the ceremony was over, while taking family pictures. When Sprague returned the second time after the wedding guests were in their cabins for the night, she and her family made sure the guests were safe and locked in. She recalled being low to the ground and on the floor for about an hour until her new husband informed her that Sprague had been arrested.

After Sprague's arrest, Jeffrey Hack was charged with Conspiracy to Commit Criminal Mischief and Conspiracy to Commit Restricted Person in Possession of a Dangerous Weapon, both third-degree felonies. The State amended the charge to a single count of Conspiracy to Commit Criminal Mischief as a Class A misdemeanor. The jury convicted Hack of the charge, but as a Class C misdemeanor.

**RULING AND CONCLUSIONS OF LAW**

The court must arrest judgment if the facts proved do not constitute a public offense.[2] And when, as here, the motion is based on alleged insufficient evidence, the court must determine "whether the jury's verdict is reasonable in light of all of the evidence taken cumulatively, under a standard of review that yields deference to all reasonable inferences supporting the jury's verdict."[3]

***I. The State's case depends entirely on the evidence about Tannerite.***

As was explained to the jury at trial, Tannerite is a stable explosive that is often sold at sporting goods stores, generally for recreational purposes. It has two component parts that are packaged separately, and it is not regulated by the ATF in its component parts. Once the parts are mixed, it is illegal to transport it in a vehicle. But it is generally considered a stable explosive. Here, law enforcement transported the mixed Tannerite from Sprague's car to the Sheriff's office in a patrol vehicle. The critical fact about Tannerite is that it is not easily exploded. It won't detonate if it's set on fire, hit with a hammer, sandpapered, or even shot with a handgun or .22 caliber rifle. Instead, detonation requires a high-velocity rifle round traveling at more than 2,000 feet per second. Detective Whitney used his AR-15 with a velocity of about 3,000 feet per second to detonate Sprague's Tannerite. And the State introduced no evidence that Sprague possessed any firearms when he went to Moab.

The State argues that Sprague committed criminal mischief when he was on the wedding venue property as an uninvited guest, claimed to have a bomb, and drove a vehicle that contained mixed Tannerite because Tannerite is a device capable of causing destruction or harm to human life.

But considering the entire trial record, the court is convinced that the State's case for criminal mischief depends solely on Sprague's possession of Tannerite. It was the only evidentiary item that could have met the elements of the criminal mischief charge (discussed below) if it had been used as instructed. Thus, the court must consider whether Hack had the specific intent to commit criminal mischief with Sprague by using Tannerite to disrupt the wedding.

---

[2] Utah R. Crim. P. 23.

[3] *State v. Clegg*, 569 P.3d 1093, 1097 (Utah Ct.App. 2025).

## *II. The evidence at trial does not prove either Criminal Mischief or Conspiracy.*

The jury convicted Hack of Conspiracy to Commit Criminal Mischief, a Class C misdemeanor. To do so, they had to find the following elements, according to the jury instructions:

Criminal Mischief: (1) the conspirators intentionally or unlawfully tampered with the property of another, and as a result (2) recklessly endangered human health.

Conspiracy: (1) Hack, intending [to commit criminal mischief], (2) agreed with Sprague to engage in or cause the performance of the conduct, and (3) any one of them commits an overt act in pursuance of the conspiracy.

The State struggled at oral argument to explain what constituted criminal mischief here, ultimately arguing that just being an uninvited guest was enough to be considered "tampering" with the property of another, and that the Tannerite recklessly endangered human health. But in the court's view, this is a case where the predicate offense was never completed. Sprague didn't tamper with the property of another because simply being present at a wedding venue as an uninvited guest is not criminal mischief. And there are many ways to disrupt a wedding that are not illegal—talk loudly through the service, wear a silly costume, show up uninvited, etc.[4] Nevertheless, it is well-settled that a conspiracy conviction will be affirmed even if the predicate offense fails, as long as the co-conspirator reached an agreement with the specific intent that the predicate crime be committed.

Hack clearly intended for Sprague to commit mischief in a colloquial sense. He wanted Sprague to be disruptive at the wedding. But there is insufficient evidence that he intended Sprague to unlawfully tamper with property using Tannerite. First, Sprague bought the Tannerite with money intended for a GoPro camera from Radio

[4] These facts might have supported a charge of Conspiracy to Commit Trespass (as the predicate offense), but the State did not charge that.

Shack. He didn't inform Hack of that. He did not buy the Tannerite until the night before the wedding in Moab, and there was no discussion with Hack about the purchase. Sprague did not take a means of detonation (high-power rifle) nor was there evidence that it had been discussed. And, perhaps most importantly, Hack never mentioned anything about explosives generally or Tannerite specifically. In fact, none of the messages or phone calls between Sprague and Hack ever mentioned disrupting the wedding with explosives and Hack never encouraged Sprague to do so.

Hack conspired to have a friend crash his sister's wedding. But nothing in the evidence demonstrates that Hack intended for Sprague to tamper with the wedding venue, any attendees' property, or detonate an explosive. Accordingly, the court reluctantly replaces the jury's collective judgment with its own decision because the actions that Sprague and Hack agreed to take do not constitute the predicate offense of criminal mischief.

## CONCLUSION

The court arrests judgment and enters a judgment of acquittal based on the evidence and testimony presented at trial.

Dated: 9/2/2025

By: ____________________

Don M. Torgerson
District Court Judge

STATE OF UTAH
SEVENTH DISTRICT COURT

**CERTIFICATE OF NOTIFICATION**

I certify that a copy of the attached document was sent to the following people for case 241700041 by the method and on the date specified.

EMAIL: BRADLEY HENDERSON BRAD@STONERIVERLAW.COM

EMAIL: AARON LANCASTER thines@grandcountyutah.gov

EMAIL: GREGORY JOHNSON GREGORYJ@UTAHCOUNTY.GOV

Date: 09/02/2025 /s/ CAITLYN VANZANT

Signature