THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CHARLENE HACK,<br><br>    Plaintiff,<br><br>v.<br><br>DANIEL M. PRESTON a/k/a DANIEL PRESTON MARTIN, JEFFREY PAUL HACK, JAYNE D. HACK, and DOES 1-10, inclusive,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT JAYNE D. STEPHENS [HACK] MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS PURSUANT TO FED. R. CIV. P. 12(b)(5) AND 7(m)**<br><br>Case No. 4:25-cv-00096-DN<br><br>District Judge David Nuffer |

Defendant Jayne D. Hack (also known as Jayne D. Stephens and hereinafter referred to as "Ms. Stephens") moves to dismiss this action under Fed. R. Civ. P. 12(b)(5) and 4(m).[1] In opposition to Ms. Stephens' Motion, Plaintiff Charlene Hack ("Ms. Hack") argues that the Motion should be denied because her failure to serve Ms. Stephens is because of Ms. Stephens' intentional evasion of service, which constitutes "good cause."[2] For the reasons stated herein, and good cause, the Motion[3] is **DENIED**.

---

[1] Defendant Jayne Stephens' Motion to Dismiss for Insufficient Service of Process Pursuant to Fed. R. Civ. P. 12(b)(5) and 4(m) ("Motion"), docket no. 26, filed February 9, 2026.

[2] Plaintiff's Opposition to Defendant Jayne Stephens' Motion to Dismiss for Untimely Service [Fed R. Civ. P. 4(m)] ("Opposition"), docket no. 30, filed February 4, 2026.

[3] Docket no. 26.

**STATEMENT OF FACTS**

Ms. Hack filed her Complaint on August 1, 2025.[4] On November 3, 2025, after more than ninety days had passed, and with no indication on the docket that a summons was issued, Ms. Hack was ordered to comply with Federal Rule of Civil 4(m).[5] Specifically, Ms. Hack was ordered to show proof of service for Defendant Jayne Hack (also known as Jayne Stephens, hereinafter referred to as "Ms. Stephens") "on or before Wednesday, December 3, 2025."[6] On December 3, 2025, Ms. Hack moved for additional time to serve Ms. Stephens,[7] which was granted and extended until February 2, 2026.[8]

From the time the Complaint was filed, until this Motion was filed, Ms. Hack attempted to serve Ms. Stephens approximately fourteen times, at three different addresses, two in Milton, Florida, and one in Tucson, Arizona.[9] Initially the process server attempted service at the Misty Sunrise Trail address, in Milton, Florida (hereinafter referred to as the "Misty Sunrise Trail" address). An older gentleman answered the door and claimed Ms. Stephens did not live there and that he did not know Ms. Stephens.[10]

On September 23, 2025, the process server then attempted service at the second Milton, Florida address.[11] The process server learned from the person who answered the door that they

---

[4] Complaint, docket no. 1, filed August 1, 2025.

[5] Docket Text Order no. 17, filed November 3, 2025.

[6] *Id.*

[7] Motion to Extend Time to Serve Defendants Daniel M. Preston and Jayne D. Hack [Fed. R. Civ. P. 4(m)], docket no. 19, filed December 3, 2025.

[8] Order Granting Plaintiff's Motion to Extend Deadline to Serve Complaint, docket no. 22, filed December 4, 2025.

[9] *See generally* Declaration of James M. Johnson ("Johnson Declaration") attached to Opposition at 12-18.

[10] *Id.* at 13, ¶ 7.

[11] *Id.* at 14, ¶ 9.

did not know Ms. Stephens.[12] The property records also confirmed that the property was owned by someone other than Ms. Stephens.[13] Another nationwide search for Ms. Stephens' found that she most likely still resided at the Misty Sunrise Trail because her nursing license was registered to the address.[14] The process server then attempted service at that address four more times, but without success. The process server noted that the property had a video doorbell.[15]

In January 2026, the process server attempted service at the Misty Sunrise Trail address but noticed that there were no longer any cars in the driveway and no one answered the door.[16] The process server then checked the property records and discovered the home had been sold in December 2025, prompting another nationwide search resulting in a new Tucson, Arizona address.[17] On a second visit to the Misty Sunrise Trail address in January 2026, the new owner of the Misty Sunrise Trail home in Florida confirmed that he had purchased the home in December 2025.[18]

Service was due February 2, 2026.[19] The process server then attempted to serve Ms. Stephens at the new Tucson, Arizona, address on February 5th, but Jayne's husband, Jerry Stephens, answered the door and told the process server: "it's too late."[20] Service was then again

---

[12] *Id.* at 13–14, ¶ 8.

[13] *Id.*

[14] *Id.* at 14–15, ¶ 11.

[15] *Id.*

[16] *Id.* at 15, ¶ 12.

[17] *Id.* ¶ 13.

[18] *Id.* at 15, ¶ 12.

[19] Docket Text Order no. 17, filed November 3, 2025.

[20] Johnson Declaration at 14, ¶ 14; *see generally* Defendant Jayne Stephens' Reply in Support of Her Motion to Dismiss for Insufficient Service of Process Pursuant to Fed. R. Civ. P. 12(b)(5) and 4(m) ("Reply") at 3, docket no. 32, filed February 25, 2026 (confirming that the Florida home was sold and she is located at a new Arizona address).

attempted on February 6, 2026; February 10, 2026 (when someone looked through the blinds); and February 18, 2026 (when someone again looked through the blinds).[21]

On February 9, 2026, Ms. Stephens filed her pro se Motion[22] seeking dismissal for insufficient service.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 4(m), when timely service has not been made, the action must either be dismissed without prejudice or the court may "order that service be made within a specified period of time."[23] "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."[24] "Good cause" is defined by the Tenth Circuit:

> Without attempting a rigid or all-encompassing definition of 'good cause' it would appear to require *at least as much* as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of 'good faith on the part of the party seeking the enlargement *and* some reasonable basis for noncompliance within the time specified' is normally required. *The district court is clearly not compelled to accept a lesser "excusable neglect" showing.*[25]

"'[G]ood cause' requires a greater showing than 'excusable neglect.'"[26] "Good cause comes into play in situations in which there is no fault—excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the

---

[21] *Id.* at 18–20.

[22] Motion, docket no. 26, filed February 9, 2026.

[23] Fed. R. Civ. P. 4(m), 12(b)(5).

[24] Fed. R. Civ. P. 4(m).

[25] *In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996) (emphasis in original) (quoting *Winters v. Teledyne Movible Offshore, Inc.,* 776 F.2d 1304, 1306 (5th Cir.1985)); *see also Putnam v. Morris*, 833 F.2d at 905.

[26] *In re Kirkland*, 86 F.3d at 175 (citing *Putnam*, 833 F.2d at 905).

control of the movant."[27] "It requires the moving party to show the deadline cannot be met despite the movant's diligent efforts."[28]

If good cause is not shown, the Tenth Circuit has explained that a "district court must still consider whether a permissive extension of time may be warranted."[29] "At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service."[30]

## ANALYSIS

Ms. Stephens filed her Motion seven days after the extended service deadline, and four days after a process server attempted service at her new address and was informed by her husband that it was "too late."[31] The Motion, Opposition, and Reply present two distinct issues: first, whether good cause exists supporting a mandatory extension of time for service; and second, if good cause does not exist, whether a permissive extension should be granted. Ms. Hack's history of attempts at service satisfies both inquiries.

### I.    Ms. Stephens' Evasion of Service Constitutes Good Cause

Ms. Hack argues that Jayne Stephens has evaded service,[32] which the Tenth Circuit recognizes constitutes "good cause."[33] In *Hendry v. Schneider*, the Tenth Circuit explained that

---

[27] *Utah Republican Party v. Herbert*, 678 F. App'x 697, 700-01 (10th Cir. 2017) (quotations and citation omitted).

[28] *Id.* at 701.

[29] *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

[30] *Id.*

[31] Motion at 1; *see also* Opposition at 6.

[32] Opposition at 8–10.

[33] *Hendry v. Schneider*, 116 F.3d at 446, 449, n.2 (10th Cir. 1997) (quoting *Cox v. Sandia Corp.*, 941 F.2d 1124, 1125 (10th Cir.1991)).

"'evasion of service' constituted 'good cause'" because a plaintiff cannot be faulted for failing to complete service when the defendant's own conduct frustrates diligent efforts to effect service.[34]

In *Hendry,* the court found that the plaintiff had presented detailed evidence of diligent, but unsuccessful service attempts, which demonstrated that the defendant had willfully and intentionally avoided service of process.[35] "Unfortunately, Rule 4(j) does not define 'good cause,' and the legislative history of the Rule cites, as the only example of 'good cause,' a defendant's evasion of service."[36] "However, case law interpreting Rule 4[(m)] overwhelmingly illustrates that mere inadvertence is not sufficient to meet that rule's good cause standard."[37]

> In *Cox v. Sandia Corp.,* 941 F.2d 1124 (10th Cir.1991), the Tenth Circuit recognized that "courts that have considered this issue have regarded as insufficient excuses such as inadvertence and reliance on a process server who fails to perform." *Id.* at 1125; *see also Putnam v. Morris,* 833 F.2d 903, 905 (10th Cir.1987) ("simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice" to show good cause within meaning of Rule 4(j)); *Geiger,* 850 F.2d at 333 (stating courts agree that counsel's inadvertent failure to serve defendant within statutory period does not constitute good cause); *Kersh v. Derozier,* 851 F.2d 1509, 1512 (5th Cir.1988) (finding that *pro se* litigant's ignorance of rule does not constitute good cause to justify extending service deadline) . . . .").[38]

To support her claims for "good cause," Ms. Hack points to Ms. Stephens' actions in (1) refusing to answer the door at her known, occupied residence, in Florida (which was listed on her nursing license, likely an address she had to provide to the Florida Board of Nursing), and (2)

---

[34] *Id.* at 449.

[35] *Id.*

[36] *Cloyd v. Arthur Anderson & Co.,* 151 F.R.D. 407, 411 (D. Utah 1993) (citing *Wei v. Hawaii,* 763 F.2d 370, 372 (9th Cir.1985) (per curiam)), *aff'd sub nom. Cloyd v. Arthur Andersen & Co.,* 25 F.3d 1056 (10th Cir. 1994).

[37] *Id.*

[38] *Id.* (noting that 4(j) is now 4(m) after the sweeping 1993 amendments to the FRCP, shifting the time-limit rule from subsection (j) down to subsection (m)).

now refusing the accept the paperwork or answer the door at her new home in Arizona.[39] Ms. Stephens' actions demonstrate evasive tactics to avoid service.

James M. Johnson, Ms. Hack's attorney hired "primarily responsible for Charlene's efforts to serve her summonses and complaint on the defendants in this action," argues diligent efforts were made to serve Ms. Stephens.[40] The Johnson Declaration states that service was attempted approximately thirteen times at the addresses on Misty Sunrise Trail, Florida and in Tucson, Arizona, to no avail.[41] As explained below, Ms. Hack has exercised reasonable diligence in attempting service, but Ms. Stephens' conduct frustrated those efforts; accordingly, the good-cause requirement is satisfied. [42]

### A. Misty Sunrise Trail Evasion of Service

On September 10, 2025, the process server hired to find where Ms. Stephens lived spoke to one person at the Misty Sunrise Trail address.[43] Although it is unclear whether the elderly gentleman who answered the door was, or is, a relative or friend of Ms. Stephens, they were dishonest about who owned the property. Ms. Stephens does not dispute that she owned the property until December 2025.[44] Nevertheless, the individual who answered the door represented to the process server that Ms. Stephens neither lived nor owned the property, a representation inconsistent with her own filings.[45]

---

[39] Opposition at 8–10.

[40] Johnson Declaration at 12, ¶ 2.

[41] *See generally id.*

[42] *See generally id.* at 12–18.

[43] *Id.* at 13, ¶ 7.

[44] Reply at 3 (discussing Ms. Hack's knowledge of Ms. Stephens' Arizona ties. She claims Ms. Hack "knew from her own October 2025 investigator report that Ms. Stephens had ties to Arizona. Her process server confirmed the Florida home sale and Arizona address in *January 2026*.")

[45] *See id.*

At the Misty Sunrise Trail property, it is possible that even without answering the door service was being evaded because the property was equipped with a Ring doorbell camera.[46]

Ms. Stephens also argues that Ms. Hack knew she had ties to Arizona during the sixty-day service period because of an investigator's report from October 2025.[47] But there is no evidence that Ms. Hack would have been aware of the Arizona address before sometime in January 2026.[48]

### B. Arizona Evasion of Service

Within days or weeks after Ms. Hack confirmed Ms. Stephens was in Arizona, she attempted service.[49] On February 5, 2026, Ms. Stephens' husband answered the door, refused to open the door to accept the Complaint and Summons, and stated that it was "too late."[50] He appeared to be aware that he knew of the deadline for Ms. Stephens to be served with legal paperwork in this case.

After she filed her Motion, Ms. Stephens has continued to evade service at her Arizona home by refusing to answer the door, peeking through the blinds and then not answering the door, and potentially advising her husband to refuse service, stating that it is "too late" through the door and refused to open the door.[51] All of this, taken together, constitute good cause.

---

[46] Johnson Declaration at 15, ¶ 11.

[47] Motion at 4–5.

[48] Johnson Declaration at 15, ¶ 12.

[49] *Id.* at 15, ¶¶ 12–14.

[50] *Id.* at 15–16, ¶ 14.

[51] *Id.* at 15–18, ¶¶ 15–20.

## II.     The Circumstances Also Warrant a Discretionary Extension

Ms. Hack has shown good cause and an extension is mandatory.[52] But Ms. Stephens' in Reply argues that good cause is not shown and that the discretionary extension factors "favor dismissal."[53] As the Tenth Circuit in *Espinoza* explains, Rule 4(m) broadened the district court's discretion to extend the time for service even absent a showing of good cause.[54]

Because there is good cause, an extension is required, and there is no need for an analysis on permissive extensions. Even so, discretion also warrants an extension. There are several factors relevant to whether a permissive extension should be given, including: "(1) potential barring of claims under a statute of limitation, (2) prejudice to the defendant, (3) whether the defendant had notice, (4) the likelihood of eventual service, (5) whether the plaintiff is represented by counsel, and (6) the length of the delay."[55] A review of these factors and the underlying circumstances favor extension rather than dismissal.

Ms. Hack's request does not present a statute of limitations issue. The danger of prejudice to Ms. Stephens is minimal. Ms. Stephens is now aware of this action and has appeared in a limited capacity. Ms. Stephens has also admittedly received a copy of the Complaint through the same email address she has provided to the court.[56] Under these circumstances, Ms. Stephens cannot credibly claim surprise or an inability to defend the action.

---

[52] Opposition at 8–10.

[53] Reply 4–5.

[54] *Espinoza*, 52 F.3d 838, 840–41.

[55] *Seegmiller v. City of St. George*, No. 4:25-CV-000057-AMA-PK, 2026 WL 1296107, at *2 (D. Utah May 12, 2026) (quoting *SMHG Phase I, LLC v. Eisenberg*, No. 1:22-CV-00035-DBB-JCB, 2024 WL 1578193, at *6 (D. Utah Mar. 15, 2024), *report and recommendation adopted*, No. 1:22-CV-00035, 2024 WL 1406498 (D. Utah Apr. 2, 2024)).

[56] Reply at 6.

Moreover, where a defendant has actual notice of the lawsuit and no meaningful prejudice will result from a brief extension, courts routinely favor permitting service to be completed rather than dismissing an action on procedural grounds.[57] Once in Arizona, Mr. Stephens, Ms. Stephens' husband, told the process server, "It's too late."[58] He appeared to be aware that service was being attempted in this case since its filing.

Ms. Hack is represented by counsel, and the likelihood of eventual service is high. The length of the delay is also relatively brief. The court's extended deadline for service expired on February 2, 2026. There is no indication that this limited delay has materially affected the progress of the litigation, or impaired Ms. Stephens' ability to respond.

Ms. Stephens argues that Ms. Hack, should have sought alternative service sooner. However, the failure to immediately seek alternative service does not require dismissal when the defendant evades service, and courts retain their discretion.[59] Specifically, Rule 4(m) requires that the court either "dismiss the action without prejudice against that defendant or order that service be made within a specified time."[60] Ironically, Ms. Stephen's motion triggered the possibility of extension of time by laying a record of the need to extend time for service.

---

[57].*Espinoza*, 52 F.3d 838, 841 (10th Cir. 1995).

[58] Johnson Declaration at 9.

[59] Fed. R. Civ. P. 4(m).

[60] *Id.*

## ORDER

The Motion[61] is **DENIED**:

- Within fourteen (14) days Mrs. Hack must provide the court with the form of an order for alternative service via email and mail, using the email and mailing addresses Ms. Stephens provided to the court.

- Within sixty (60) days of this order Ms. Hack must provide proof of service for Ms. Stephens.

- Because Ms. Stephens' papers appear drafted with assistance, she must file a declaration within fourteen (14) days identifying each person or AI tool used in preparing her papers filed to date. A declaration with this same information shall accompany any further filings by her unless counsel files on her behalf.

Signed July 27, 2026.

BY THE COURT

David Nuffer
United States District Judge

---

[61] Defendant Jayne Stephens' Motion to Dismiss for Insufficient Service of Process Pursuant to Fed. R. Civ. P. 12(b)(5) and 4(m), docket no. 26, filed February 9, 2026.

11