THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CHARLENE HACK,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL M. PRESTON a/k/a DANIEL PRESTON MARTIN, JEFFREY PAUL HACK, JAYNE D. HACK, and DOES 1-10, inclusive,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S [34] MOTION TO DISMISS COUNTERCLAIMS**<br><br>Case No. 4:25-cv-00096-DN<br><br>District Judge David Nuffer |

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Plaintiff Charlene Hack ("Ms. Hack") moves to dismiss her brother's, Defendant Jeffrey Paul Hack ("Mr. Hack"), counterclaims,[1] which are: (1) defamation, for a March 31, 2025 text message ("Text Message"); (2) defamation, for a September 28, 2025 Facebook post ("Facebook Post"); and (3) invasion of privacy, for placing him in a false light through the Text Message and Facebook Post (collectively referred to as the "Published Statements").[2].Ms. Hack moves for dismissal arguing that the Published Statements as alleged are either substantially "true, privileged under Utah law,

[1] Plaintiff Charlene Hack's Motion to Dismiss Counterclaims and Supporting Brief [Fed. R. Civ. P. 12(b)(6)]; Request for Judicial Notice of Record from Underlying Utah State Court Criminal Proceeding ("Motion"), docket no. 34, filed March 17, 2026.

[2] Defendant Jeffrey Hack's Amended Answer to Complaint and Counterclaim ("Counterclaims"), docket no. 29, filed February 24, 2026. This document was filed by Mr. Hack as "Counterclaim" without noting that it was also an amended answer. In docket no 31, filed February 25, 2026, the clerk noted the error. Defendant again filed the same document, but re-titled it only as "Amended Answer," on February 26, 2026, docket no. 33.)

and/or protected opinion."[3] Mr. Hack has opposed the Motion.[4] For the reasons stated herein, and good cause, the Motion[5] is **DENIED in part and GRANTED in part, with prejudice**.

**TABLE OF CONTENTS**


JUDICIAL NOTICE ..... 2
STATEMENT OF FACTS ..... 3
STANDARD OF REVIEW ..... 6
ANALYSIS ..... 6
I. The First Counterclaim for Defamation is Dismissed with Prejudice Because the Text Message is Substantially True ..... 7
II. Mr. Hack's Second Counterclaim for Defamation Cannot Be Dismissed or Resolved at the Pleading Stage ..... 8
III. The Third Counterclaim for False Light Is Dismissed as to the Text Message but May Proceed as to the Facebook Post's Allegation of "Fraudulent Actions" ..... 10
ORDER ..... 11


## JUDICIAL NOTICE

Ms. Hack's Motion is accompanied by an Order Arresting Judgment entered by a Utah trial court. She asks that judicial notice be taken and the order be considered in reviewing this Motion. [6] Mr. Hack does not object and routinely cites to the order in his Opposition.[7] Federal Rules of Civil Procedure 201 provides that "[t]he court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information."[8] The Tenth Circuit, explains the doctrine of judicial notice: "[I]t has been held that federal courts, in appropriate

---

[3] *See* Motion at 2 (noting Ms. Hack has not disputed that the statements were published, but argues instead that they are non-defamatory because they are substantially true, opinion, or privileged).

[4] Defendant Jeffrey Hack's Memorandum in Opposition to Plaintiff's Motion to Dismiss ("Opposition"), docket no. 34, filed April 7, 2026.

[5] Motion, docket no. 34, filed March 17, 2026.

[6] Motion at 5–6; Order Arresting Judgment, docket no. 34-1, filed March 17, 2026;

[7] *See* Opposition at 2–5.

[8] Fed. R. Evid. 201(c)(2).

circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." [9]

Ms. Hack argues that judicial notice is appropriate because the Order Arresting Judgment "provides helpful background information about the criminal charges against [Mr. Hack]" and "necessary context for [Ms. Hack]'s allegedly defamatory statements."[10]

The Order Arresting Judgment is directly related to Mr. Hack's Counterclaims and provides context necessary to determine whether the Published Statements are defamatory. Therefore, the Order Arresting Judgment is judicially noticed.

## STATEMENT OF FACTS

This case arises from events that took place during and after Ms. Hack's wedding.[11] "Apparently angry that his mother [who is also Ms. Hack's mother] wasn't invited to the wedding, Hack enlisted a former Marine Corps buddy with shaky mental health ("[Mr.] Sprague") to drive from Las Vegas to Moab, Utah, and cause mischief at the wedding."[12] To cause this mischief, Mr. Hack "supplied" Mr. Sprague with "a copy of the wedding invitation (date, time, and location), provided some details about the family, asked Sprague to record and photograph whatever he ended up doing, and provided $400 for gas and supplies."[13]

Mr. Hack "directed [Mr.] Sprague to a Radio Shack to purchase a GoPro camera and redirected Sprague when he was lost and heading to Ogden instead of Moab."[14] Mr. Sprague

---

[9] *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

[10] Motion at 5–6.

[11] Complaint, docket no. 1, filed August 1, 2025.

[12] Order Arresting Judgment at 1.

[13] *Id.*

[14] *Id.*

then purchased mixed Tannerite (an explosive)[15] but never bought the GoPro.[16] Instead he used that money to purchase drugs and other items.[17] The day of the wedding, Mr. Sprague arrived and tried to enter but was turned away by the wedding planner.[18] Mr. Sprague then asked to see the person in charge, which happened to also be the wedding planner, and "showed her a box wrapped around his leg with wires coming out of it, claiming it was a bomb."[19] Law enforcement was contacted and Mr. Sprague was arrested.

Following the events at the wedding, Mr. Hack was charged with two third-degree felonies: (1) conspiracy to commit criminal mischief; and (2) conspiracy to commit the crime of being a restricted person in possession of a dangerous weapon.[20] The State later amended the charges to a single class C misdemeanor, "Conspiracy to Commit Criminal Mischief."[21]

On or before March 31, 2025, a "jury convicted [Mr.] Hack of Conspiracy to Commit Criminal Mischief, a Class C misdemeanor."[22] To do so, the Order Arresting Judgment explains that the jury had to find the following elements, according to the jury instructions:

> Criminal Mischief: (1) the conspirators intentionally or unlawfully tampered with the property of another, and as a result (2) recklessly endangered human health. Conspiracy: (1) Hack, intending [to commit criminal mischief], (2) agreed with Sprague to engage in or cause the performance of the conduct, and (3) any one of them commits an overt act in pursuance of the conspiracy.[23]

---

[15] *Id.* at 3 ("Tannerite is a stable explosive that is often sold at sporting goods stores, generally for recreational purposes. It has two component parts that are packaged separately, and it is not regulated by the ATF in its component parts, Once the parts are missed, it is illegal to transport in a vehicle.").

[16] *Id.* at 2.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 2

[21] *Id.*

[22] *Id.* at 4; *see also* Counterclaims at 10, ¶ 6.

[23] Order Arresting Judgment at 4.

Months later, on September 2, 2025, the state trial court arrested Mr. Hack's judgment holding:

> [Mr.] Hack clearly intended for Sprague to commit mischief in a colloquial sense. He wanted Sprague to be disruptive at the wedding. But there is insufficient evidence that he intended Sprague to unlawfully tamper with property using Tannerite. . . . [Mr.] Hack conspired to have a friend crash his sister's wedding. But nothing in the evidence demonstrates that Hack intended for Sprague to tamper with the wedding venue, any attendees' property, or detonate an explosive.[24]

Mr. Hack's Counterclaims stem from the Published Statements he alleges have defamed him and placed him in a false light. First, following the jury verdict, on March 31, 2025, Ms. Hack sent a text message to Karen Cortez, which is paraphrased in the Counterclaims to read:

> • The jury concluded, beyond a reasonable doubt, that Hack was "behind the terroristic attacks on my wedding."
> • Hack "sent a man with Molotov cocktails, explosives and weapons into my wedding."[25]

Following the Order Arresting Judgment, on September 28, 2025, Ms. Hack posted to her Facebook profile which is also paraphrased in the Counterclaims and reads:

> [T]hat Hack engaged in "reprehensible actions against" her, and made "threats against" the family and engaged in "fraudulent actions." Charlene further stated that Hack's "lack of remorse for endangering innocent lives during [her] wedding is appalling."[26]

The Counterclaims assert that these allegations are false, to which Ms. Hack has filed this Motion arguing they are either substantially true, privileged, or protected opinion.[27]

---

[24] *Id.*

[25] Counterclaims at 10, ¶ 6.

[26] *Id.* at 10, ¶ 8.

[27] Motion at 2.

## STANDARD OF REVIEW

Ms. Hack moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of the counterclaims asserted in Mr. Hack's Second Amended Complaint and Counterclaim.[28] "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"[29] Dismissal is appropriate under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[30] Each cause of action must be supported by enough sufficient, well-pleaded facts to be plausible on its face.[31] All well-pleaded factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[32] However, "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation" of the law are disregarded.[33]

## ANALYSIS

Mr. Hack has brought two defamation claims—one based on the March 31, 2025 text message and one based on the September 28, 2025 Facebook post—and a claim for false-light invasion of privacy based on these Published Statements.[34] The analysis that follows addresses the sufficiency of each counterclaim under the applicable legal standards and determines whether each claim may proceed or must be dismissed.

---

[28] Motion at 1–2, 12.

[29] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 544 (2007)); *see also* *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

[30] Fed. R. Civ. P. 12(b)(6); *see Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. Mar. 1, 1999).

[31] *Twombly*, 550 U.S.at 570.

[32] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. Nov. 25, 1997).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[34] Counterclaims at 11–14.

## I. The First Counterclaim for Defamation is Dismissed with Prejudice Because the Text Message is Substantially True

The first counterclaim alleges that Ms. Hack defamed Mr. Hack through the Text Message sent March 31, 2025 to her friend, Karen Cortez, stating that the jury concluded, beyond a reasonable doubt, that Jeffrey was "behind the terroristic attacks" on her wedding and that he "sent a man with Molotov cocktails, explosives and weapons" to the wedding.[35] The Motion argues that this counterclaim fails because the statements are true and subject to privilege.[36] A successful cause of action for defamation requires the following elements: (1) Ms. Hack published the statements in question; (2) her statements are false; (3) her statements are not subject to any privilege; (4) her statements were published with the requisite degree of fault; and (5) her statements resulted in damages.[37] As set forth below, the Text Message is substantially true as a matter of law.

Under Utah law, a statement need not be literally true to defeat a defamation claim and minor inaccuracies do not establish actionable falsity when the substance, gist, and sting of the statement are substantially true.[38] The statement need not be literally precise to be substantially true.[39] Under the substantial-truth standard, the law permits "insignificant inaccuracies of expression" when the statement remains true in substance.[40]

At the time Ms. Hack sent the text message, on March 31, 2025, Mr. Hack had been convicted of conspiracy to commit criminal mischief.[41] The underlying proceedings established

---

[35] Counterclaims at 10, ¶ 6.

[36] Motion at 2.

[37] *Davidson v. Baird*, 2019 UT App 8, ¶ 25, 438 P.3d 928, 936.

[38] *Auto W., Inc. v. Baggs*, 678 P.2d 286, 290 (Utah 1984).

[39] *Id.*

[40] *Id.*

[41] *See* Order Arresting Judgment at 4.

that Mr. Hack enlisted Mr. Sprague to disrupt the wedding, and that Mr. Sprague arrived with Tannerite, an explosive, and other weapons. Although the jury did not convict Mr. Hack of a "terroristic attack," and the record did not establish that Sprague possessed Molotov cocktails, those differences do not materially alter the gist or sting of the statement.[42] The reference to Molotov cocktails was, at most, an immaterial inaccuracy in describing the dangerous materials involved.

Accordingly, pursuant to Rule 12(b)(6), the first counterclaim is **DISMISSED WITH PREJUDICE** for failure to state a claim as a matter of law.

## II. Mr. Hack's Second Counterclaim for Defamation Cannot Be Dismissed or Resolved at the Pleading Stage

The second counterclaim arises from Ms. Hack's Facebook Post which, taken as true, accuses Mr. Hack of engaging in "reprehensible actions;" making "threats against" the family; committing "fraudulent actions;" and showing a "lack of remorse for endangering innocent lives" during the wedding.[43] The Motion argues that this counterclaim fails in its entirety because the statements are protected opinion and substantially true.[44] Unlike the Text Message, however, the Facebook post cannot be entirely resolved on the face of the pleadings under Rule 12(b)(6).

Actionable defamation requires a false statement of fact.[45] Under Utah law, expressions of pure opinion—statements that are not subject to being proven true or false—are protected under the First Amendment and cannot support a defamation claim.[46] Furthermore, and

---

[42] *Id.* at 1–2, 3–4.

[43] Counterclaims at 11, ¶ 8.

[44] Motion at 2, 10–12.

[45] *Davidson*, 2019 UT App 8, ¶ 25.

[46] *West v. Thomson Newspapers*, 872 P.2d 999, 1015 (Utah 1994); *see also* Utah Const., Art. I, § 1

explained more fully above, a statement that is substantially true does not constitute actionable falsity.[47] To distinguish fact from opinion, the Utah Supreme Court looks to the following four factors:

> (i) the common usage or meaning of the words used; (ii) whether the statement is capable of being objectively verified as true or false; (iii) the full context of the statement—for example, the entire article or column—in which the defamatory statement is made; and (iv) the broader setting in which the statement appears.[48]

Certainly, there are several portions of the Facebook Post as it is alleged that do constitute non-actionable opinion or are substantially true. Characterizations such as "reprehensible" and "appalling" are value judgments reflecting Ms. Hack's subjective perception of the underlying record. These statements are incapable of objective verification, they are constitutionally protected opinions as a matter of law.[49]

The reference that Mr. Hack made "threats against" the family is substantially true when measured against the established record. Orchestrating an unstable individual to target an intimate family event with private operational details (i.e., supplying an invite to a private event), direction to cause mischief, and money to cause disruption is inherently a threat to the peace, safety, and security of the family present at the wedding.[50] The underlying record supports that in response to Mr. Hack's directive, Mr. Sprague did attempt to access Ms. Hack's wedding and when denied access, then threatened the family gathering with a bomb.[51]

---

[47] *Auto W.*, 678 P.2d at 290.

[48] *West*, 872 P.2d at 1018.

[49] *See id.* at 1015 (holding that statements incapable of objective factual verification cannot form the basis of a defamation claim).

[50] *See* Order Arresting Judgment at 1–2, 4.

[51] *Id.* at 2.

However, the allegation of "fraudulent actions,"[52] stands on different legal footing. Unlike general hyperbole, the phrase "fraudulent actions" connotes specific, objectively verifiable wrongful conduct.[53] Because the full context of the post is not before the Court and the truth or falsity of this specific charge cannot be resolved on the face of the pleadings, the Court cannot determine at this stage that the statement is protected opinion or substantially true as a matter of law.

Accordingly, the motion to dismiss the second counterclaim must be **DENIED** insofar as it targets the accusation of "fraudulent actions." However, the allegations of defamation by the statements of opinion are not actionable and are **DISMISSED WITH PREJUDICE**.

### III. The Third Counterclaim for False Light Is Dismissed as to the Text Message but May Proceed as to the Facebook Post's Allegation of "Fraudulent Actions"

The third counterclaim asserts invasion of privacy based on false light.[54] Under Utah law, false light is closely allied with defamation, and the substantive defenses applicable to defamation claims also apply to claims for false light.[55] A claim for false light requires a showing that the defendant gave publicity to a matter concerning the plaintiff that placed them before the public in a false light, where the false light would be highly offensive to a reasonable person, and the defendant acted with knowledge or reckless disregard as to the falsity of the

---

[52] Counterclaims at 11, ¶ 8.

[53] *See Mathews v. McCown*, 2025 UT 34, ¶ 100, 575 P.3d 1114, 1136 (defining "fraud" as an intentional perversion of truth or an act of deceiving/misrepresenting to induce reliance, confirming its specific and verifiable factual nature) ("Words like "fraud" and "defraud," like the word "crooks," can carry criminal connotations in some contexts.");*see also West*, 872 P.2d at 1015 (explaining that statements are actionable facts rather than opinions if they can be objectively verified).

[54] Counterclaims at 13–14, ¶¶ 28–36.

[55] *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380 (Utah Ct. App. 1997) (explaining in the context of defenses to false light: "A false light claim is 'closely allied' with an action for defamation, and "the same considerations apply to each.").

publicized matter.[56] Consequently, the third counterclaim rises or falls with the underlying communications and turns on the same threshold issues of falsity, privilege, substantial truth, and protected opinion.

To the extent the false-light claim relies on the Text Message, dismissal is required for the reasons set forth in Section I. The text message was substantially true as a matter of law. Because the Text Message lacks the requisite element of actionable falsity, it cannot support a cause of action for false light.

The same conclusion, however, does not follow for the Facebook Post. Although broad portions of that post constitute non-actionable opinion or substantially true characterizations, the specific accusation that Mr. Hack engaged in "fraudulent actions" presents an actionable factual assertion.[57] Because the allegation of fraud carries a verifiably false meaning, and because the full context of the post cannot be evaluated on the face of the pleadings, this statement is sufficient to satisfy the falsity element at the Rule 12(b)(6) stage.

Accordingly, Mr. Hack's Third Counterclaim for false light is **DISMISSED WITH PREJUDICE** to the extent it relies on or arises from the Text Message.

## ORDER

IT IS HEREBY ORDERED that Ms. Hack's Motion[58] seeking dismissal of all of Mr. Hack's Counterclaims pursuant to Rule 12(b)(6) is **GRANTED IN PART** and **DENIED IN PART** as follows:

---

[56] *Id.* at 380.

[57] *See Mathews*, 2025 UT 34, ¶ 100.

[58] Plaintiff Charlene Hack's Motion to Dismiss Counterclaims and Supporting Brief [Fed. R. Civ. P. 12(b)(6)]; Request for Judicial Notice of Record from Underlying Utah State Court Criminal Proceeding ("Motion"), docket no. 34, filed March 17, 2026.

1. Plaintiff's Motion is **GRANTED** as to the First Counterclaim. Defendant's First Counterclaim is **DISMISSED WITH PREJUDICE**.

2. Plaintiff's Motion is **DENIED** as to the Second Counterclaim allegation arising from the text stating the defendant had committed fraudulent actions.

3. Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART** as to the Third Counterclaim. The Third Counterclaim is **DISMISSED WITH PREJUDICE** to the extent it is based on the March 31, 2025 Text Message and as to the September 28, 2025 Facebook Post, but **DENIED** as to the statement that the defendant had committed fraudulent actions.

4. Within 28 days, Defendant must file an Amended Answer and Amended Counterclaim omitting the dismissed allegations, and any reference to the non-actionable statements.

Signed September 25, 2026.

BY THE COURT

David Nuffer
United States District Judge